Your Honor, I respond to today's call, 209-19, Gouvreau v. Lakeway Motors, with my followers, on behalf of the Appellant, Mr. Bill Huddle, on behalf of the Advocate, Mr. Edward Arshon. Mr. Huddle. Mr. Huddle, Your Honor. Please report. Counsel. This matter comes before the Court on an appeal from the Kane County Circuit Court. On November 24, 2008, the Court dismissed the Gouvreau v. Lakeway and Albers case, granting the defendant's motion to quash service of summons based on the Illinois long-arm statute conditions not being met. And the Court found that the eBay advertising the selling of five automobiles to Illinois residents was not enough. Judge Fabian also denied the plaintiff's motion to disqualify the Lilick firm, finding that the prior representation was not substantially related to the current litigation. We took a timely appeal from the Court's order, and I want to make one thing clear before we get too far astray. We're not trying to allege, nor do we try to argue in the appeal, that the Winters case, the real estate matter, is substantially related to this matter. I don't think it is. Any arguments I've made in the trial court to that effect, I'm letting go of because it wasn't a good argument. However, the argument that Julie Gouvreau did raise in her supplement to the motion to disqualify was that Julie consulted with the Lilick firm, specifically Mr. James Joyce. James Joyce was a member of the Lilick firm handling their matter against Winter, and she talked to him specifically about this lawsuit. And I did argue in the trial court, and I have argued here, they did not waive the conflict of interest with Mr. Joyce or with the Lilick firm, that they intended to talk to Mr. Joyce about retaining him to represent them in this matter before Mr. Lear was contacted. And there's obviously a substantial relationship between this matter and this matter. Didn't the attorney offer an affidavit that they did not speak about this particular issue? Yes, that's exactly right. And yes, Judge, in your reading of the record is correct. Mr. Joyce did say that he had not spoken to anyone else about the matter after he spoke to Gouvreau specifically. However, and of course, Judge Fabian made that point. That's how he pretty much brushed this matter aside. He didn't really brush it aside, but he found that that was sufficient to resolve the issue of the conflict that was alleged. In all due respect to Judge Fabian, who's an excellent jurist and I think very highly of him and wish him well in his retirement, he did not consider the case that I cited to the court. And that was the Herbis case versus, I have it here. In that case, it was argued in the trial court, H-E-R-B-E-S versus Grant. This court considered the appeal and Justice McLaren actually wrote for the court in that opinion. And in following King versus King, an earlier decided case, Justice McLaren held that we're, in the court, held that we're, a lawyer speaks to someone in interviewing them for possible representation. And then later, there is a, if you will, changing of the guard that is representing the adversary. It really doesn't matter whether there's any communications. There's a presumed, if you will, in what Justice McLaren wrote, an irrebuttable presumption that there is confidential information that is passed. And there was, there's an irrebuttable presumption that... Well, that's a confidential information passed between the prospective client and the attorney, correct? No question there's an irrebuttable presumption of confidential information, but... Yes, Justice McGuire, I agree. But now there's cases after the Herbie's that talk about a rebuttable presumption regarding people in a law firm talking to each other. And there are cases that say that it is not rebuttable. So the cases go both ways. You have some cases from Illinois that say that it is an irrebuttable presumption that attorneys within the law firm are talking to each other? There's a case called Franzoni. I don't know if I brought it up. But yes, the Franzoni case says that it is an irrebuttable presumption. Well, but in Franzoni, you did bring it up. And that they have to seek a, they have to establish, the parties seeking this qualification have to establish a former attorney-client relationship. We don't have an actual attorney-client relationship here, do we? I think we do. And again, going back to Herbie's, as Justice McClaren said, we're the lawyers... I changed my mind about that. And, well, you have the right to do that. But let me say this. I thought your prior thoughts on the matter were better because when a lawyer sits down with a client, already representing that client, in this case, Joyce is speaking to Julie Gavro, as she states in her affidavit, and she confides in him about this car, this 1970 Nova from Missouri, and discusses the facts of the case with the lawyer. I think that there's an attorney-client relationship that is at stake there. She's confiding confidential information that must be protected under Rule 1.9. And I think that's what King says, and that's what Justice McClaren upheld in Herbie's case. And I ask this Court to do the same. Well, the plaintiffs in Herbie's, though, cited to Index Futures Group, Inc. And Justice McClaren, I think, very astutely pointed out that the distinction between Herbie's and Index Futures Group, Inc., is that the presumption in those cases referring to Index Futures Group, Inc., is that members of a law firm share their clients' confidences with one another, was determined to be rebuttable. I mean, that's what Justice McClaren wrote. And that's really what we're talking about here, isn't it? Because this gentleman left the firm before the defendant showed up at the door. Mr. Joyce left the firm in April. I have no knowledge of that, and that's certainly not addressed in anything in the record. Well, but Mr. Mendoza's affidavit says that. Mr. Mendoza's affidavit is not real clear about the dates as to the first contacts by Albers with the firm. And I'm not suggesting that anybody called Mr. Albers after they talked to Julie Gavro. What I am suggesting is I think this Court should be very leery of expanding this type of rule, because, again, the administration of justice should be strictly guarded to make sure that these types of things don't occur. I agree with that, but, I mean, how do you respond to Rule Professional Conduct 1.10 that talks about when a lawyer has terminated association with a firm, the firm thereafter may represent a person with interests materially adverse to those of a client represented by the former associate if no lawyer remaining in the firm has any information protected by the rules? All I'm saying is that it's possible that people did have information protected by the rules. What I argued at the Court, and I know I don't have much time, but I'll move on to the jurisdiction argument, is that in this case, I argued that from what I can see from the file, James Joyce was an entirely competent lawyer. The little firm are very competent lawyers. I'm sure there were notes taken, and that certainly wasn't addressed. So your honors will do what you will with this record and those rules. If I could, though, I'd like to move on to the jurisdictional issues. It appeared to me in the trial court, respectfully, your honors, that Judge Fabian did not give much regard to our tort committed in Illinois theory. It appeared that he was focused on the transaction of business and those arguments, which was not the thrust of my argument. My argument is simply this, and I argue here, and I think the trial court can be reviewed de novo on this, although it has to be an abuse of discretion on the first issue that I addressed. This is a de novo issue. The complaint was not denied in Elmer's affidavit. None of the statements were denied that Mr. John Gavarro made, that there were repeated phone calls and communications between Illinois and Missouri, it was not denied that the contract was sent from Missouri into Illinois, and based on the misrepresentations that were made, that this vehicle had a good engine, had good front disc brakes, in fact was in show quality is what they were told, and the car had been completely restored to its initial condition. The car was a mess. It was going to take $10,000 just to get this car running and on the road again. That's hardly show condition in an engine in top quality performance running condition. So all of the, if you will, the misrepresentations are undenied, and as far as fraud in its inception to cause the contract, those were before the court without any denial by Elmer's. Moreover, in this case, John Gavarro relied upon those representations here in Illinois, and that's what he says in his affidavit. In his affidavit he says, I was in Illinois when those representations were made, paragraph 6 of his affidavit. Although all communications were made to the Gavarro's while the defendants were not in Illinois, the Gavarro's were located in Illinois, and this fact was known to the defendants at the time the misrepresentations were made. None of that was denied by Elmer's at all. Well, you would agree that if we found, let's say we found that there was a tortious act in Illinois and long-arm jurisdiction statute applies, we still have to look at due process. I mean, that's a second step, and I think Judge Fabian was maybe, you know, you may think he's putting the cart before the horse, but I may think that because if there are no minimum contacts whether there's torts committed here or not, you know, so if you look at the tort, then you have to look at the minimum contacts, but if you look at the minimum contacts first, then you may not ever even get to the tort issue. But I agree with you, Justice. I think he put the cart before the horse, though. He decided there were no minimum contacts before he decided whether the long-arm statute was met, but then the order says the long-arm conditions aren't met. That's what he rules in writing. As I read the ruling, and I was surprised by it after I heard the argument that I had just heard in his oral ruling, but in any event, there's repeated communications in Illinois, and one can be enough, okay? This says repeated. Elders admits that he sold five cars in Illinois and delivered them here. The car is delivered by a company called Joe Art Transport, and just so the record is clear, in paragraph 5 of John Devereaux's affidavit, he says he didn't go down to Missouri and hire anybody to bring it up here. The car was delivered to him by the defendant, by the defendant's agents in St. Charles. So the delivery is here, and that, under the Switzerland case, if Your Honors will, I brought with me, in the Switzerland case versus Cox is a very substantial case, very concisely ruled upon by the appellate court, and the court there said the delivery is a sufficient minimum contact. There it is. They used the roads of Illinois to bring the car in here. They're using Illinois benefits. Why can they sell cars in Illinois and not come here to defend the lawsuit? I find that inconsistent. In Switzerland, there were two prior sales between the defendant and the plaintiff, were there not? Yes, sir. I wouldn't deny that. This was the third sale, and also there was no choice of laws provision in Switzerland that we have here. However, in this case, the defendant admits five prior sales in Illinois. That's the second same car. Does that really matter? I mean, why is that the issue? We're talking about minimum contacts. Why do they all have to be with the same person? If the guy's doing some minimum repeated activities in Illinois, I see nothing in the law that says that it has to be with the same person. Is that in there somewhere? I didn't read that in it. If that is in there, I obviously missed it because I've been known to miss things. But here's the thing from where I was coming from with Judge Fabian's ruling. When we look ultimately about what happens here, the damage is here. The guy, the governor, always gets the car here, and they find the car is a mess. The car is going to take $10,000 just to put back together. In doing so, we come to the Green case, which says, really, the gravamen of where a tort occurs is where the damage occurs. And the argument that we got in the trial court was the car was wrecked down in Missouri, so the damage is down there. And I respectfully would ask that you reconsider the judge's ruling, reverse the order quashing summons, and remand this case to the Kane County Court, finding that there is sufficient context, minimum context, to justify the due process clause and that there was a tort committed here in Illinois respectfully. Thank you, sir. I have an opportunity to make a vote. Thank you, sir. Mr. Sherman. Good afternoon, Your Honors. Good afternoon. May it please the Court. My name is Ed Sherman. I'm here today on behalf of Lakeway Motors and Michael Albers, the affiliates in this case. Obviously, the Court, we've already gone through and we know there are two issues on this appeal, personal jurisdiction and claim for disqualification of counsel. With respect to personal jurisdiction, as this Court has already addressed, the issue ultimately is whether due process is satisfied for having jurisdiction over Lakeway and Albers here in Illinois. If that's not satisfied, there's no need to address the long-arm issues. And also considering the amendments to the Code of Civil Procedure, the long-arm statute, because it allows for the greatest extent of due process from minimum context, there's really no need to analyze that at all except to the extent it goes to due process. So I'm going to focus my argument on due process. Specifically, as this Court is aware, it's a plaintiff, the guru, it's a prima facie burden to establish jurisdiction in this case. And with respect to establishing jurisdiction, the contact, the three things that you do is you have to establish minimum context, as the Court's aware. You have to establish that the action that they're bringing arises out of those contacts unless they're serving general jurisdiction, which is not a matter before this Court. And you have to show that it's reasonable to require the defendants to litigate in Illinois. With respect to minimum context, the Court needs to analyze the defendant's contacts. Your client's business, is it exclusively through the Internet, or does he have some land-based entity in Missouri? Your Honor, they're actually, it's not part of the record, but as far as I know, I think that they're out of an area in central Missouri near Lake of the Ozarks. That's where they're at. And I think that's kind of referenced in the record with the contracts and where the vehicle could be picked up. But this transaction is via electronic means, both Internet initially, according to the record, and then phone conversations thereafter. Your Honor, this transaction, as Your Honor probably knows from the record, it was initiated, there was an eBay transaction, eBay posting, which isn't really directed at any state. And I cited Malone v. Berry in my brief on that for jurisdiction. But then after that occurred, there was a purchase contract that our client sent into Illinois, and I would submit to the court that is the only adequate part of any record here on appeal as to any contact between Lakeway and Alvarez in this case and the state of Illinois. Your client didn't know that people could view eBay in the state of Illinois? I don't know what my client could know or not, but I don't think the fact that people in Illinois could view eBay is really the relevant question because it's the question of whether or not Lakeway and Alvarez actually directed their actions at the state of Illinois. eBay is not directed at the state of Illinois. Is it not directed to the state of Illinois? It's not directed to anywhere in particular. But it goes everywhere. Of course, the Internet, yeah. But in this case here, the initial contact was actually when the Gouvros, if I pronounced it correctly, went ahead and bid, and they actually were seeking the vehicle that was in Missouri. It's almost like they were reaching into Missouri for this transaction, not a case where you have Lakeway and Alvarez posting an advertisement, let's say, in the Chicago Tribune. No, wait. Weren't they reaching into eBay as opposed to Missouri? They were reaching into eBay, but they knew when they were bidding on it that they were bidding on a vehicle that was in Missouri. Okay, but your clients didn't know that eBay could be reached from Illinois. I guess. It doesn't make sense, counsel, what you're trying to sell right now. Your client is not going to go on the Internet and only direct, or eBay in particular, and only direct it out to a certain location. It doesn't work that way. Well, with respect to eBay, there's no way that I think that, and I don't know. I've not done eBay myself. I don't think there's a way that you can tell on an eBay posting, I'm not going to send it to this state or that state. It just goes everywhere. Then you have to read the rules and regulations of eBay, which I'm sure your client has done. Honestly, I don't know if my client would have done that. Also, if eBay has contacts, minimal contacts in the state of Illinois, and eBay is the agent of the seller, then why doesn't the seller have minimal contacts in the state of Illinois? I do not know if eBay is specifically the agent of the seller. Without having, and it's not part of the record, without having eBay's rules and regulations as to how that works, there's no way for me to explain that to the court as far as the relationship between the parties. If that's something, obviously, that Guberose wanted to bring up as part of the proceedings before the trial court, they could have brought those facts to light, but I don't believe that's something proper before the court is the record, and I do not know what eBay's status would be in this matter. You cited the loan. The only Illinois case I could find regarding eBay was a Foley case out of the Northern District of Illinois, which certainly is not precedential on this court. Okay. But have you found any cases, I mean, you're citing the loan, and then the loan cites the vast majority of cases that say that eBay is not reaching into the state. Foley does the same thing. Are there any cases out there that you've seen that where eBay is found to be purposefully reaching into a particular state? Not that I've found, no. Okay. With respect to, as I was stating, the contact I'm submitting, I submit that the contact between Lakeway and Alvarez and the state of Illinois was the contract they mailed in, and with respect to the law on the contract itself, the mere mailing of a contract into Illinois by itself is insufficient to confer jurisdiction. In looking at a contract, the court needs to look at who initiated the contact, which we've been discussing at length here, the negotiation of the contract, where it occurred, the formation of the contract, and where it was to be performed. Now, as I've submitted, the initiation of the contact here was by the Guveros bidding on the NOVA. If the Guveros did not bid on the NOVA, then the transaction would not have gone here in Illinois. Someone else probably would have gotten it, whether it was Illinois, Missouri, Wisconsin, China. It could have been anywhere. So the second thing is negotiation of the contract. I do not believe there's anything in the record regarding the negotiation between the parties. The formation of the contract is ñ Where did the ñ how did the conversations about the ñ or how did the information about the condition of the vehicle get back to the Guveros? Well, the only thing that I'm aware of in the record, Your Honor, is the posting on eBay, which discussed the condition of the vehicle, which is attached to the complaint of the Guveros. That's the only thing I'm aware of. And in the record, there's statements by John Guvero regarding communications and alleged representations and misrepresentations. They don't state what those were. They don't state when they occurred, which is really important, or who initiated them. I mean, for all we know, it could have been a situation where the Guveros called to ask about the vehicle. And, again, whether or not anything was wrong with the vehicle or not is not part of this appeal. The appeal is whether we have personal jurisdiction disqualification. The issue of whether something was wrong or not is actually the decision of whether they said it was or not. It's something for trial. The later date, I had to submit it in the state of Missouri, where jurisdiction is proper over Lake Wayne hours. But with the communications, they don't state who initiated those. If it's the Guveros who initiated the communication, they're reaching out of Illinois. They're going into Missouri saying, tell me about this vehicle. Illinois has an interest to protect its citizens if someone's coming in Illinois and committing any kind of alleged fraud. However, if people in Illinois are going out to another state to do something, I don't see Illinois's interest being as great, which would get to the whole reasonableness requirement. Wouldn't that have something more particularly to do with what law should be applied, which we're not discussing in this particular appeal? Well, no. The law to be applied is part of this appeal, Your Honor. I submit that the contract provided, that is, the contract, first of all, said it was not finalized until it was executed by Lake Wayne in Albertson, Missouri. And number two, it states it's governed by the laws of Camden County, Missouri. And I would submit in my brief, I know I have a limited time here, is this Court's decision in Boulder v. Nautico International, which I would say is probably the most similar. There's no case exactly the same. The most similar case cited in any party's brief to the case that's here before this Court. But the trial court amended its order to change, to specifically say it wasn't making a decision on that issue, didn't it? What issue, Your Honor? On the issue of does Missouri law have this particular provision or should it be applied? There was no determination. I don't know if there's any determination by that court. Obviously, this court has this matter in the know, and they can make that decision on their own. I would suggest that with respect to that, and that's also important, too, the second requirement on personal jurisdiction is the actions that are taken, you know, that are complained of, are those related to the contacts of the state. Is the minimum or minimal contacts test that we are to apply to this case, is the standard that is to be applied to that issue to be based upon Missouri law or to be based upon Illinois law? Well, I would submit, Your Honor, it's probably got to be on the personal jurisdiction issue. That's a good question. I would think it would be Illinois, but I'm not sure, Your Honor. Well, there's a case out of this district that related to, I believe, something having to do with Missouri's court claims or some administrative agency. And then it was brought here, and the question was whether it was deemed to be a, and I think it had something to do with the court claims, but it was a similar issue that related to just exactly whose law do we apply when we start determining what it is that we're supposed to be determining. And in a rather complex, almost convoluted decision, it seemed like we applied Missouri law. And so what I'm asking you is, is Missouri law any different than Illinois law? Because I'm familiar with minimal contacts in Illinois. I'm not too familiar with what Missouri's minimal contacts for purposes of due process are concerned. I don't know, Your Honor, but I think it's not really something that needs to be addressed, because under the federal Constitution, which sets minimal contacts, you know, Illinois can have more restrictions to protection of people. Under the federal Constitution, it's the same no matter where you are. So I think that this Court's looking at this primarily under the federal decisions regarding minimal contacts. In that case, whether Missouri law or Illinois law would view differently and give you more restrictive protections to people such as Lakeway and Alpers, I don't think that's something that really needs to be answered. Tell me why Bolger v. Nautica is more similar to this case than Switzerland. Well, I think Bolger v. Nautica, Your Honor, is specifically similar because in that case, in Bolger, you had an Illinois plaintiff contacting a Florida boat dealer. And in this case here, as I submit eBay, what I'm saying is, you know, I'm submitting that the contact was by the Guberos to get the vehicle in Missouri. After that, a purchase contract, I believe, of Bolger v. Nautica, they had received in Illinois, they signed in Illinois. The contract said it was subject to, it was not considered executed until it was signed by the dealer in Florida, and it was subject to the choice of law provisions of the state of Florida. And in that case, the plaintiff, just like this case, said that I viewed this stuff here, you know, in Illinois. I signed it in Illinois. And this Court here decided that that was not sufficient. I'd like to just mention a couple other things here that counsel brought up. I know my time is limited. With respect to selling cars in Illinois, I think that with all due respect, that's a little bit of a misrepresentation of the record in that Michael Albers' affidavit did not state he sold cars in Illinois. He sold them to Illinois residents. And I think that's a big distinction. The point of this is that he sold a small percentage of the cars to people who were Illinois residents, not that he sold them in Illinois. There's nothing in the record that stated, hey, look, he delivered them or did anything like that. In fact, Lakewood stated they'd never entered Illinois with respect to this transaction. So I need to point that out to Your Honor. Is there anything in the record to show how the car got here? The only thing in the record is Joe. Joe R. transported it. And the other thing here says who's. It had his direction, I guess. Well, that's the thing. Michael Albers said he did not enter into Illinois for any part of this matter here. And the statement by Mr. Gubrow stating that Joe R. was an agent of Lakewood itself, that's under 191 of the Illinois Supreme Court rules. I don't think that's sufficient. I think that's just a conclusory statement. If the Gubrows wanted to establish something factual, they had the opportunity at the trial court to try to dig more out or ask for a hearing, bring witnesses in that. But I don't think there's anything before the court to state who specifically arranged for the vehicle to be delivered into the state of Illinois. With respect to. . . How much business did your client do via the Internet? The only thing I have, Your Honor, is what's in the record. As far as the number of vehicles, I don't know how much they did via the Internet, in all honesty. Well, how many cars did they sell after that? With Mr. Albert's affidavit, he stated that in the year in question, they sold a total of 158 vehicles, of which five were purchased by Illinois residents. So how many would be enough? You're saying that the fact that this is Illinois residents is the problem, you should say, with people in Illinois. That would make a difference? I would say that if it involved actually conducting business or doing transactions in Illinois or saying that I delivered them in Illinois or something like that, yes, that would make a difference. But that's not in the record. All it says is it sold to Illinois residents. I mean, I can sell my car tomorrow to someone from Texas, but that doesn't necessarily mean just because I sold it to Texas that I've submitted myself to personal jurisdiction. They can come to my house and they can pick it up. They can initiate the contact for everything. Did the group Rose come and pick this car up? I don't know. It's not part of the record. And, again, it's the plainest burden to establish the record for this as a primary patient case of jurisdiction. Mr. Huddle said that your client made representations in the state of Illinois about the quality or the level of workmanship of the vehicle. And I was curious, what is your take on that statement? Well, I've got basically here in the record just nothing with respect to the allegations of any representations made. But I do have the fact that we do not have any initiation, you know, no statement that our client initiated those conversations, no statements to when they occurred. If they occurred after the transaction was complete, I would submit to the court that they're not really relevant to the actions that caused the matter to be taken. I see that my time has expired. If I could have one moment to address disqualification, I'd like to, but if not, I'd thank you for your time. Do I have a moment? Thank you, Your Honor. With respect to disqualification, I would just submit that the only things that are not in the brief are, number one, Illinois Rule of Professional Conduct 1.92, sub-paragraph B, that allows a lawyer that formally represented a client can use confidential information once it's disclosed to the disadvantage of that previous client. In this case here, the affidavits and the documents before this court don't show. First of all, I'm not admitting or stating anything that there's confidential information disclosed. But if it was disclosed, the timeline and sequence for this case shows that Mr. Joyce left Lilligan-Thorsness. Afterwards, the complaint was served on Lakeway and Alberts, and then Lilligan-Thorsness represented Lakeway and Alberts. There's nothing to show anything that Julie Gouvreau would have told Mr. Joyce is any different than the complaint. Therefore, it's highly possible, and if they wanted to establish otherwise, it was their burden before the trial court in this qualification to establish there was something different than what was publicly known by the time Lilligan-Thorsness was retained by Lakeway. And finally, as Your Honor mentioned earlier, with respect to Rule 1.10, sub-paragraph B, I put this court's attention to after the briefing was done, the Illinois Supreme Court changed the rules of professional conduct regarding 1.10B. It actually flipped it around a little, and it actually supports our case even more. And I think it would be something that would be applicable to the present case on appeal because it's a procedural change, not substantive. Under this case, and I just referenced this court's case of inmate marriage of Dugan, 376 ILL APP 3D725, regarding whether something substantive or procedural. I think the change to 1.10 is important for this case as well because now all you have to show is if someone is formally associated has left the firm, okay, and they had that information, the firm can represent someone adverse unless it's shown there's a substantial relationship and that any remaining attorney had information. You don't have to show both anymore. You just have to show one. And in this case here, the trial courts made that decision that Jim Joyce told no one remaining in Lilligan-Thorsness. The record shows no one at Lilligan-Thorsness has any confidential information. And this assertion by Mr. Hutto with all due respect regarding notes is an assertion he made at the trial court but not supported by any facts in the record. And on that point, Your Honor, I thank you very much for your time. And if you have any other questions, but, okay. Thank you. Thank you, Your Honor. I would like to address a couple of questions that were asked by the court. John Dubrow stated in his affidavit a couple of things that are important here. The vehicle was purchased under contracts which the affiant signed in the state of Illinois at his home in St. Charles. Paragraph 5 of his affidavit says that the affiant took delivery of the vehicle in Illinois when it was delivered to affiant by defendant's agent in St. Charles. I just want to talk briefly about those two statements and come back to the third one. The law states, as I understand it, in the International Business Machine case, the IBM versus Martin Property and Casualty Insurance, in examining whether the trial court had jurisdiction over a defendant, conflicts between the parties will be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of jurisdiction was shown. In this case, in the trial court, we had John Dubrow's undenied affidavit that the contract was signed here in Illinois. We also had his undenied affidavit that the car was delivered here in Illinois by the defendant's agent. What we have in disputing that, and I respectfully ask the court to consider the IBM case when you consider where the conflict and the presumption should be in resolving these two affidavits. He says, the Nova was transported from Oshawa Beach, Passage Beach, Missouri to Illinois by Jowart Transport. Nowhere else do we find the name Jowart Transport except through Mike Albers. Respectfully, it's pretty clear how we resolve this evidentiary matter. It's very obvious that Albers knew who he hired to bring that car into Illinois. Now, whether it's stating that it was their agent is a conclusion, that would be something that if we want to talk about Rule 191, that I would think the defendant would have filed some kind of motion to attack the affidavit. But as we have in the record, we have Gavreau's statement that he didn't bring the car into Illinois. He says they did. And Albers names the company. Did the trial court find the contrary, or did the trial court find that despite the fact that it was brought in from Illinois, it was not a minimal contact? As far as I understood, Judge Fabian found that in spite of what Gavreau said, and I argued that the delivery was here by them, he said there's still not minimal contacts. And I was kind of like raising up my hand. What would be? The word minimum to me means minimum, and delivery would certainly be a sufficient minimum. The other thing that we... Minimal contacts talks about foreseeability of being hailed into court. Exactly. Right. So all the eBay cases that we were discussing talk about how somebody puts something out on eBay, that they have no choice over who bids on this thing, and it could be someone from anywhere. So they're not purposefully availing themselves of the laws of the State, and they're not purposefully directing their conduct toward a particular State, such as somebody who would advertise in a particular newspaper or a particular radio station within a State. And I haven't seen an eBay case, and there actually are quite a few now. It's been around for a while, I guess, that shows that that is minimum contacts, that you are purposefully availing yourself of doing business within that State for specific jurisdiction on a case when you put something out over eBay. Well, respectfully, Your Honor, maybe it's time that some judge puts his name to that because they certainly are. In the LFG case versus Zapata, the United States District Court was bold enough to say in an Internet setting that although not eBay specifically, where parties are engaging in business on the Internet, that is sufficient minimum contacts with Illinois. And the District Court there said it wasn't unreasonable to expect, when they have repeated communications with parties over the Internet, that they come to Illinois knowing they're dealing with Illinois residents. Every case that deals with Internet versus eBay draws a distinction between Internet and eBay because the Internet cases follow the Zippo rule based upon whether you're actually, the interaction between parties and things of that nature. But all the eBay cases say, you know, the Zippo rule doesn't really apply because eBay's a different situation because it's not your personal Internet website that you're putting out there. It's just you're throwing something out at auction block and picked up by whoever. Well, Judge, respectfully, and you're a much smarter man than I am, and I'll admit it right here, but, you know, this case isn't just the eBay. You know, again, I was just going to say that the affidavit of Garreau is there, that he had repeated communications with Lakeway and the defendants, and false representations were made to him. Now, again, I go back to the IBM case and suggest under the court that those are minimal contacts. If counsel wanted to move to strike those and say they were not sufficiently planned or not sufficient as evidence, that never happened. The trial court did not strike Mr. Garreau's affidavit. It is still part of this record for this court to consider, and that is aside from the eBay statements. He's not saying eBay. He looked at the interactive website. He's saying he had repeated communications while these people knew he was in Illinois, and that's not an eBay thing. So those communications would be different than what he saw on eBay about the condition of the vehicle because I think that's what counsel is saying, that the only communication he's aware of about the condition of the vehicle was the posting on eBay. Well, I certainly don't read Mr. Garreau's affidavit that way, and he is certainly stating that they had knowledge of where he was at the time that he was talking to them, so I don't know how that would be this whole eBay thing that we don't even know who we're dealing with or where. He made the statement that they knew where he was, and that's unrebutted in this record. I thank you for your attention this afternoon, and I apologize to the court if my presentation was less than thorough or full. Thank you. The cases we've taken under advisement and dispositions will be rendered as quick as reasonably possible.